## CONTEMPT IN INDUCING JUROR TO VISIT THE PROSECUTING ATTORNEY.

Circuit Court of Cuyahoga County.

J. A. C. GOLNER ET AL V. STATE OF OHIO.

Decided, January 22, 1912.

*Contempt of Court—Tampering with Juror—Privilege of Counsel.*

1. To entice a juror in a criminal case from his home late at night and by falsehood induce him to put himself in a position which would appear compromising both to him and to the prosecuting attorney, with witnesses placed in such position that they could see the unsuspecting juror and be able to testify to his apparent, but not real, wrong-doing, is an interference with the due administration of justice and a contempt of court, punishable as such.

2. A lawyer is not privileged from testifying in a case against his client, as to a conference between him and his client in which future wrong-doing of his client was discussed.

*P. L. A. Leighley* and *F. A. Henry,* for plaintiff in error.
*John A. Cline* and *W. D. Meals,* contra.

NIMAN, J.; WINCH, J., and MARVIN, J., concur.

The plaintiffs in error, in an action in the Court of Common Pleas of Cuyahoga County, in which they were defendants, and

the defendant in error was plaintiff, were found guilty of contempt of court.   The plaintiffs in error, J. A. C. Golner and Charles Woodward, were each sentenced to serve ninety days in jail, and the plaintiffs in error, Ed. S. Goldstein and Frank Noonan, were each sentenced to serve sixty days in jail, and the costs of prosecution were adudged against said parties.

A reversal of the judgment of the court of common pleas is sought by the plaintiffs in error.   A consideration of the errors assigned requires, first, a determination of the question whether the information, on which the plaintiffs in error were attached and brought to trial, charges facts sufficient to constitute contempt of court.   Demurrers to the information were filed on behalf of the various parties charged with contempt, which were overruled, and the overruling of these demurrers is one of the errors assigned.

The information is in the following language:

"Now comes John A. Cline, the duly elected, qualified and acting prosecuting attorney of Cuyahoga county, Ohio, and informs the court as follows, to-wit:

"That at the September term, 1911, of said court, the grand jury of said county and state duly returned to said court an indictment against the defendant, J. A. Golner, duly charging the said defendant Golner with having obtained by false pretenses, certain property belonging to one E. Q. Reeves; that on the 17th day of November, 1911, said indictment was duly filed in said court in the case of the State of Ohio v. J. A. C. Golner et al, being case No. 313 on the criminal docket of said court.

"That the said defendant Golner was duly arraigned and entered a plea of not guilty to said indictment; that thereupon, said case against the said defendant Golner was set for trial at the September term, 1911, of said court, to-wit: on the 27th day of November. 1911; that on the 27th day of November, 1911, a jury was duly summoned, impaneled and sworn in said case; that whereupon, a trial of said case against the defendant Golner was duly had, which trial commenced on the 27th day of November, 1911, and ended on the 11th day of December, 1911, when the jury in said case, as aforesaid, returned a verdict to said court finding the defendant, Golner, guilty as charged in said indictment.

"That John A. Cline, prosecuting attorney as aforesaid, participated as one of counsel for the state in the trial of said case, and that one Samuel Glass was duly summoned, impaneled and

sworn as one of the jurors in said case, and sat as such juror on the trial of said case, as aforesaid.

"That on the 10th day of December, 1911, and while said case against the said defendant Golner was pending and on trial, the said defendants, J. A. C. Golner, Ed. S. Goldstein, Frank Noonan and Charles Woodward, agreed and conspired 'to-, gether with the intent then and there to interfere with, obstruct and defeat the administration of justice in said case; that on the said 10th day of December, 1911, the said defendants, J. A. C. Golner, Ed. S. Goldstein, Frank Noonan and Charles Woodward, in furtherance of said unlawful design, did then and there falsely pretend and represent to the said Samuel Glass, one of the jurors in said case, as aforesaid, that the said John A. Cline, prosecuting attorney and counsel in said case, as aforesaid, wanted to see him, the said Samuel Glass, at his, the said John A. Cline's residence, for the purpose of having a personal interview with him and that the said John A. Cline had sent them to convey him, the said Samuel Glass, by automobile to his, the said John A. Cline's, residence.

"That said representations made by said defendants to the said Samuel Glass, as aforesaid, were all and singular false and untrue, which the said defendants then and there well knew.

"That thereupon, to-wit, on the said 10th day of December, 1911, the said Samuel Glass, believing that said representations made to him by said defendants, as aforesaid, were true, accompanied said defendants in an automobile to the residence of the said John A. Cline, at No. 2276 Murray Hill avenue, S. E., in the city of Cleveland, said county and state.

"That said defendants, J. A. C. Golner and Ed. S. Goldstein, Frank Noonan and Charles Woodward, in furtherance of said conspiracy to obstruct the administration of justice in said case through fraud and deception, procured four men, who were without knowledge of said conspiracy, to be present at or near the said residence of the said John A. Cline, so as to be able to see the said Samuel Glass enter and leave said residence, and give testimony thereof in said case for the purpose of causing a mistrial of said case, or, in the event that a verdict of guilty were returned by the jury in the case, for the purpose of obtaining a new trial thereof.

"That by reason of the premises, as aforesaid, said defendants, J. A. C. Golner, Ed. S. Goldstein, Frank Noonan and Charles Woodward were then and thereby guilty of obstructing the administration of justice, and of contempt of this court, contrary to the statute in such case made and provided.

"JOHN A. CLINE,
"*Prosecuting Attorney.*"

Section 12136 of the General Code provides:

"A court or judge at chambers summarily may punish a person guilty of misbehavior in the presence of, or so near the court or judge, as to obstruct the administration of justice."

In Oswald on "Contempt of Court," page 8, it is said:

"To speak generally, contempt of court may be said to be constituted by any conduct that tends to bring the authority and administration of the law into disrepute or disregard, or to interfere with or prejudice parties litigant or their witnesses during the litigation."

In *Hole* v. *State*, 55 O. S., 213, it was held that removing a witness from the county of his residence where he was under subpoena to attend upon the trial of a cause pending, with the purpose and effect of preventing his appearance upon the day of trial, was a wrongful act which obstructed the administration of justice, and was a contempt of court.

The information here charged facts constituting a conspiracy on the part of the plaintiffs in error to interfere with and obstruct the administration of justice and a carrying out of that conspiracy. The necessary result of the acts attributed to the plaintiffs in error would be to bring the authority and administration of the law into disrespect and disregard and hamper and cripple the agencies through which it acts. The information, therefore, states facts which constitute a contempt of court.

Another error assigned by the plaintiffs in error makes it necessary to consider the evidence on which the conviction in the court below was based. It is claimed by the plaintiffs in error that the evidence did not establish their guilt as charged in the information, but on the contrary, proved an innocent and laudable course of conduct on their part.

The evidence shows that while the plaintiff in error J. A. C. Golner was on trial in the criminal branch of the Common Pleas Court of Cuyahoga County, charged with obtaining property under false pretenses, he, with the other plaintiffs in error, entered into an arrangement whereby a juror in that case was to be induced by a fictitious message to go to the house of the proseting attorney engaged in trying the case on behalf of the state.

The plan contemplated the presence of witnesses who should see the juror enter the prosecutor's house. The plaintiff in error Charles Woodward, seems to have been the author of this program. Sunday night, December 10, 1911, was the time chosen for its execution. On the evening of that day a meeting was held by the plaintiffs in error at Woodward's office, at which Horace Neff, an attorney at law, was present. Mr. Neff had previously been retained by the plaintiff in error, J. C. A. Golner, in connection, it appears, with the criminal case then on trial, and at this meeting the plan was unfolded and his advice sought on the legality of the transaction. He testifies that in substance his opinion, as given, was that no statute would be violated. Later that evening, the plaintiff in error, Frank Noonan, in an automobile hired for that purpose, and operated by one who had no knowledge of the plan being carried out, went to the house of the juror, told him that Prosecutor Cline wanted to see him on important business, and taking the juror into the car, drove across the city to the home of Mr. Cline, where the juror was directed by Noonan to go to the door and call for the prosecutor. In the meantime the plaintiff in error, Ed. S. Goldstein, in another automobile and accompanied by Mr. Neff and four other men, who knew nothing of what was to happen, until later at least, had driven to the vicinity of Mr. Cline's house and were waiting the arrival of the other car. As soon as the prosecutor came to the door in answer to the call of the juror, all the other parties rapidly disappeared from the neighborhood.

It is claimed by plaintiffs in error that their only purpose in conceiving and executing this affair was to test the juror whom they believed, on reasonable grounds, to be subservient to the prosecuting attorney to such an extent that he would come at any time and to any place that official might summon him, and thereby demonstrate that he was disqualified. They assert that they acted only after they had obtained legal advice, and point to the fact that no use was made in the criminal case of the visit of the juror to the home of Mr. Cline as evidence that no improper motives animated them.

In a case like this the character of the acts of the parties involved, and the apparent purposes to be accomplished, indicate

more accurately the motives of the actors than their own protestations.

The whole scheme as conceived and executed was wrongful, and there is no room for doubt that the parties who engaged in it were well aware of its doubtful character. A juror was enticed from his home late at night and by falsehood induced to put himself in a position which would, on its face, appear compromising both to him and to the prosecuting attorney. Witnesses were placed in such a position that they could see the unsuspecting juror and be able to testify to his apparent, but not real, wrongdoing.

If this elaborate scheme had no other purpose than to demonstrate the juror's subserviency to the prosecutor, it is difficult to see the need of so many witnesses as were engaged for the occasion. The evidence shows that some other motive than the mere testing of the juror, of whose allegiance to the prosecutor they seemed satisfied, was back of their plan.

In our opinion, the conviction was justified by the evidence, unless the court erred in permitting the witness, Horace Neff, to testify against the objection of the plaintiffs in error. It is claimed that Mr. Neff was, at the time of the meeting in Woodward's office, acting as attorney for the plaintiff in error, that he was consulted by them upon this occasion as their legal adviser with respect to the whole transaction, and that he is disqualified from testifying.

Under Section 11493, General Code, an attorney is prevented from testifying concerning a communication made to him by his client in that relation, or his advice to his client.

The principles of law decisive of the question involved in the action of the trial court in permitting Mr. Neff to testify, are thoroughly and learnedly discussed in Volume 4 of Wigmore on Evidence, Section 2298. In this section the author discussing the privilege between client and attorney says:

"It has been agreed from the beginning that the privilege can not avail to protect the client in connecting with the attorney a crime or other evil enterprise; and for the logically sufficient reason that no such enterprise falls within the just scope of the relation between legal adviser and client."

Again, after discussing the reasons for the rule protecting confidences of persons who have already committed crimes or wrongs, imparted to their attorneys, the author says:

"But these reasons all cease to operate at a certain point, namely, where the desired advice refers not to prior wrongdoing, but to future wrongdoing. From that point onward, no protection is called for by any of these considerations."

In *Mathews* v. *Hoagland*, 48 N. J. Eq., 455 (21 Atl., 1054), the rule is stated as follows:

"If the client consults the lawyer with reference to the perpetration of a crime, and they co-operate in effecting it, there is no privilege, for it is no part of an attorney's duty to assist in crime; he ceases to be counsel and becomes a criminal. If he refuses to be a party to the act, still there is no privilege, because he can not properly be consulted professionally for advice to aid in the perpetration of a crime. In the case of fraud, if it is affected by the co-operation of the attorney, it falls within the rule as to crime, for their consultation to carry it out is a conspiracy which, on its accomplishment by the commission of the overt act, becomes criminal and an indictable offense."

In view of the inherently wrongful enterprise concerning which Mr. Neff was consulted, and his own participation in its execution, the claim of the plaintiffs in error that he was improperly permitted to testify over their objection is not well founded.

Another assignment of error is based on the claim that the punishment is excessive. The punishment in contempt proceedings of this character rests within the discretion of the court. As was said in *Myers* v. *The State*, 46 O. S., 491: "The discretion here given is a sound, reasonable discretion, and its exercise in a case of this kind is reviewable."

The punishment inflicted by the trial court was undoubtedly severe, but the offense was of such a character as to merit severity, and it can not be said there was any abuse of discretion by the court.

We find no error prejudicial to the plaintiffs in error in any of the matters assigned for error, and the judgment of the court of common pleas is affirmed.